**UNTIED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                   Plaintiff,

v.

HUSSEIN ("SAM") NAZZAL,
AMNEH TAUBE,
MIKE MURRY
a/k/a
MOHAMED MERHI,

                   Defendants.

_____/

CASE NO. 11-20759

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING DEFENDANTS'**
**MOTION TO DISMISS INDICTMENT**

Before the Court is Defendant Amneh Taube's Motion to Dismiss the Indictment pursuant to Fed. R. Crim. P. 12(b) for failure to comply with the five-year statute of limitations. (Doc. 36). Defendants Hussein Nazzal and Mike Murry joined in the motion. (Docs. 42, 47). The Court heard oral argument on the motion on October 3, 2012, and at the conclusion of the hearing took the matter under advisement. For the reasons stated below, the Court **DENIES** the motion.

**I.      STATEMENT OF FACTS**

In an Indictment dated December 13, 2011, the United States charged Defendants Hussein Nazzal, Amneh Taube, and Mike Murry with conspiring to defraud the United States in violation of 18 U.S.C. § 371. (Doc. 3). Specifically, Count One of the Indictment charged that between 1997 and 2009, the Defendants conspired and agreed

to defraud the United States and one or more of its agencies and departments, that is, to impair and obstruct, by dishonest means, the functions of the Immigration and Naturalization Service ("INS") and, thereafter, the Department of Homeland Security – U.S. Citizenship and Immigration Services ("DHS"), in bestowing immigration benefits under, and otherwise administering, the Immigration and Nationality Act of the United States.

(Doc. 3 at 2). The means of the conspiracy involved "offer[ing] money and things of value to United States citizens to induce those individuals to enter into fraudulent marriages with foreign nationals for the purpose of obtaining immigration benefits for those foreign nationals." (Doc. 3 at 2-3). The indictment specified three marriages: a 1998 marriage between "Hussein N." and "Brandi B."; a 1998 marriage between Defendant Mike Murry and "Zeinab C."; and a 1999 marriage between "Mohamad A." and "Priscilla T." (Doc. 3 at 4-5). It adds that Defendants submitted numerous false documents to the INS and DHS-CIS, including a false INS petition and a false residential lease agreement in 2003. (Id.) Count One further charged overt acts of the § 371 conspiracy, including in relevant part:

19. On or about June 14, 2007, SAM NAZZAL provided materially false information to identified agents of the Department of Homeland Security – Office of Inspector General conducting an official investigation concerning the fraudulent marriage between Priscilla T. and Mohamad A.

20. On or about June 14, 2007, AMNEH TAUBE provided materially false information to identified agents of the Department of Homeland Security – Office of Inspector General conducting an official investigation concerning the fraudulent marriage between Priscilla T. and Mohamad A.

21. In and after October of 2007, SAM NAZZAL used the threat of physical force against the family of Zeinab C. with the intent to cause and induce Zeinab C. to withhold testimony, records and information from an official proceeding, that is, an investigation of the Department of Homeland Security – Office of Inspector General, into marriage fraud, immigration fraud and related activities.

22. On or about May 19, 2009, MIKE MURRY, while under oath and testifying in a proceeding before Grand Jury 09-1, a Grand Jury of the United States in the Eastern District of Michigan, knowingly made one or more false declarations concerning his marriage to Zeinab C.

(Doc. 3 at 5-6). In all, the Indictment alleged fourteen overt acts committed in furtherance of the § 371 conspiracy. (Doc. 3 at 8-11).

## II.    STANDARD OF REVIEW

Whether a claim is barred pursuant to the applicable statute of limitations period is a question of law. Sierra Club v. Slater, 120 F.3d 623, 630 (6th Cir. 1993). "To determine the scope of the alleged conspiratorial agreement, the court is bound by the language of the indictment." United States v. Hitt, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (citing United States v. Craft, 105 F.3d 1123, 1127-29 (6th Cir. 1997)). "[The court] test[s] the indictment solely on the basis of the allegations made on its face, and such allegations are taken to be true." United States v. Reitmeyer, 356 F.3d 1313, 1316-17 (10th Cir. 2004); see also United States v. Landham, 251 F.3d 1072, 1080 (6th Cir. 2001) ("courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based"). The jury is the ultimate arbiter of "whether acts are in furtherance of the conspiracy or only for purposes of concealment," depending upon the objectives of the conspiracy. United States v. Cannistraro, 800 F. Supp 30, 78 (D.N.J. 1992); see also United States v. Cunningham, 679 F.3d 355, 375 (6th Cir. 2012) ("the duration of the scheme to defraud is a question of fact for the jury") (citing Sixth Circuit Pattern Jury Instruction § 3.12).

## III.    ANALYSIS

Count One charges Defendants with a violation of the federal conspiracy statute prohibiting conspiracies "to defraud the United States, or any agency thereof in any

manner or for any purpose." 18 U.S.C. § 371. The applicable statute of limitations for a § 371 offense is five years and runs from the date of the commission of the last overt act in furtherance of the conspiracy. Craft, 105 F.3d at 1127; 18 U.S.C. § 3282(a). To satisfy the statute of limitations, the prosecution must show "both that the conspiracy still subsisted within the [five] years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period." Grunewald v. United States, 353 U.S. 391, 397 (1957). Consequently, the court must first identify the scope of the conspiratorial agreement. Identification aids in determining both of the duration of the conspiracy and whether the act charged as an overt act in the indictment "may properly be regarded as an overt act." Id.; see also United States v. Qayyum, 451 F.3d 1214, 1218 (10th Cir. 2006). The language of the indictment is controlling, and the allegations in the indictment are assumed to be true. Landham, 251 F.3d at 1080.

Taube contends the indictment should be dismissed because her false statements in 2007 do not amount to an overt act in furtherance of the conspiracy. She argues that the statements were mere concealment, and therefore insufficient to extend the conspiracy within the applicable limitations period. Taube further argues Nazzal's threats to the family of Zeinab C. cannot be attributed to her as an overt act. Last, Taube disputes the government's theory charging only one conspiracy, maintaining that there are multiple conspiracies involved in this case. However, neither party argued the role of the Court in deciding a pretrial motion to dismiss such as this. Thus, the Court raises the issue of whether it is proper to make a finding that the acts are mere

concealment, as opposed to overt acts in furtherance of the conspiratorial agreement, at this stage.

## A. Timing of the Motion to Dismiss

The Grand Jury returned the indictment against Defendants on December 13, 2011. Therefore, the prosecution must allege that the conspiracy still existed on December 13, 2006, and at least one overt act in furtherance of the conspiracy occurred after that date. See Grunewald, 353 U.S. at 395. Taube maintains the only act that falls within the applicable five-year limitations period is her alleged concealment of the conspiracy through false statements to DHS officials on June 14, 2007. She argues that mere concealment does not qualify as an overt act in furtherance of the conspiracy under the rule established in Grunewald. Therefore, because the last possible overt act alleged against her in the indictment is her alleged submission of the false residential lease agreement to the INS on February 23, 2003, the indictment is time-barred. Most, if not all, her argument is directed at this issue.

Before trial, the Court does not make the determination of whether the alleged overt act is in furtherance of the central objective or mere concealment; that is a question of fact for the jury. See Cunningham, 679 F.3d at 375. At this stage, the Court only examines the indictment to determine if it is facially valid and whether the scope of the conspiratorial objective is one that "necessitates concealment." See Grunewald, 353 U.S. at 405. In doing so, the Court is bound by the language in the indictment. Landham, 251 F.3d at 1080. The indictment alleges that the objective of the conspiracy was to impair and obstruct the functions of the Immigration and Naturalization Service and Department of Homeland Security over several years, and alleges overt acts in

furtherance within the applicable statute of limitations. Here, the plain language of the indictment alleged a conspiracy that "necessitates concealment." See Grunewald, 353 U.S. at 405.

The case at hand is analogous to United States v. Qayyum, 451 F.3d 1214 (10th Cir. 2006). Qayyum involved a pre-trial dismissal of a § 371 indictment based on the statute of limitations. The trial court ruled the conspiracy terminated when Khan achieved entry into the United States and dismissed the indictment, even though it alleged further acts of false statements to conceal Mr. Khan's illegal entry. Id. at 1217.

The Tenth Circuit reversed. Id. at 1218. The defendants argued the scope was limited to gaining Khan's illegal entry, and the false statements in concealment were not overt acts in furtherance. Id. The court held the statute of limitations did not bar prosecution because the indictment alleged the object of the conspiracy "was for the Defendants to fraudulently assist Khan to 'enter *and remain in* the United States.'" 451 F.3d at 1219 (emphasis in original). The court noted that it was convinced this type of conspiracy was one in which "the successful accomplishment of the crime necessitates concealment." Id. at 1220 (quoting Grunewald, 353 U.S. at 405).

Here, the indictment alleges the Defendants impaired and obstructed the functions of U.S. agencies over a period of several years into bestowing immigration benefits to the participants. The conspiracy was not limited to arranging false marriages, and did not terminate once the parties married and obtained benefits. The Court declines to adopt Taube's argument narrowing the conspiratorial objective into defrauding the United States solely to obtain immigration benefits for the participants through fraudulent marriage. Her false statements to government officials, charged in

6

the indictment as an overt act, plausibly furthered the Defendants' objective of impairing and obstructing the functions of the agencies. The jury will decide whether this was merely to "avoid detection and punishment after the central criminal purpose has been accomplished." See Grunewald, 353 U.S. at 405.

Taube stresses that Grunewald requires this Court to dismiss the indictment. In that case, "[t]he indictment [ ] charged that part of the conspiracy was an agreement to conceal the acts of the conspirators." Id. at 394. However, the government produced no evidence sufficient to prove an express agreement. Id. at 402-03. Regarding the government's contention that the acts of concealment served as circumstantial evidence of an implied agreement to conceal, the Court found that such a theory "would for all practical purposes wipe out the statute of limitations in conspiracy cases." Id. at 402-04. The Court held no conspiracy to conceal was shown or could be implied by the government. Id. at 406.

However, the Court indicated, "by no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy." Id. at 405. A critical distinction "must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up the crime." Id. The Court also stated that in some conspiracies "just as repainting a stolen car would be in furtherance of a conspiracy to steal; the successful accomplishment of the crime necessitates concealment." Id.

Although Defendant's argument that concealment is generally insufficient to extend a conspiracy is correct, the Court declines to conclude that Taube's false

statements were concealment for purposes of cover-up, rather than concealment done in furtherance of the conspiracy. Unlike Grunewald, which proceeded through trial, this case is in the pretrial stage. As stated above, this question is ultimately for the jury and premature at this time.

In support of narrowing the scope of the conspiratorial objective in the present case, Taube argues that a conspiracy in the context of immigration fraud is complete once the desired immigration status is achieved. United States v. Roshko, 969 F.2d 1, 7 (2nd Cir. 1992). In that case, Meir Roshko, a foreign national, entered into a fraudulent marriage with a United States citizen. Id. at 2. After receiving his green card, he divorced the citizen and married another foreign national, Irene. Id. The government asserted the conspiracy did not end until Meir and the United States citizen divorced. Id. at 2-3. However, the court disagreed, and stated that the divorce and subsequent marriage were not necessary to the success of the conspiracy, which terminated once Meir received his green card. Id. at 8. It dismissed the indictment against Irene because her subsequent act of marrying Meir was not an overt act in furtherance of the original conspiracy; i.e., to obtain a green card for Meir through the first marriage. Id. at 9 ("Consequently, we remand to the district court with a direction to dismiss the indictment as against Irene Roshko.").

Roshko is distinguishable for several reasons. First, unlike the case at hand, Roshko proceeded through trial. Second, Roshko was narrower in scope because the conspiracy charged the Roshkos with defrauding the government "by seeking changes in the immigration status of [Meir] based on a sham marriage to a United States citizen." Id. at 2. The government in Roshko did not allege a continuing conspiracy, and the

alleged objective was far narrower than the alleged objective in the present case.  Third,

the indictment was dismissed with respect to Ms. Roshko (Irene), a third party joined

pursuant to a superceding indictment.  Id. at 2-3.  Unlike Taube, Irene was never

involved, or alleged to have been involved, in the original conspiracy.  The indictment

included her simply because she married Meir after the original conspiracy terminated.

Here, Taube is alleged to have taken part in arranging the marriages, submitting false

documents to obtain benefits for the participants, and making false statements to

government officials in order to further impair and obstruct government agencies.

Therefore, the Court finds Roshko unpersuasive.

Taube also relies on United States v. Zalman, 870 F.2d 1047 (6th Cir. 1989).  In

that case, Zalman was charged with conspiracy to commit immigration fraud in violation

of § 371 for meeting with a foreign national to arrange a fraudulent marriage.  Id. at

1049.  Zalman last met with the foreign national in 1981, and the indictment was not

brought until 1987.  Id. at 1057.  Four years later in 1985, the foreign national visited an

immigration consulting agency to request assistance in obtaining citizenship after his

agreement with Zalman ended.  Id.  Zalman argued the conspiracy ended in 1981, the

date of his last contact with the foreign national.  Id.  The court agreed, stating "A careful

review of the evidence presented leads to the conclusion that the government failed to

prove any nexus between the earlier conspiracy between Zalman and [foreign national]

in 1981 and the subsequent actions *independently undertaken* by [foreign national's]

Los Angeles inquiry."  Id. (emphasis added).

Zalman does not support Taube's argument.  The court specifically noted the

independent act four years later by the foreign national was too remote to qualify as an

overt act.  The consultation clearly was not in furtherance of defendant's original conspiracy to commit immigration fraud.  Nor was it mere concealment.  Here, Taube's statements were directly related to the original conspiracy, and the question of whether they furthered its objective is for the jury.

Consequently, the indictment is facially valid and charges overt acts in furtherance of a conspiracy necessitating concealment within the statute of limitations.  At this stage, the Court declines to find Taube's acts were concealment for purposes of cover-up, as opposed to overt acts in furtherance of the conspiratorial objective.  See United States v. Carnesi, 461 F. Supp. 2d 97, 98-99 (E.D.N.Y. 2006) ("If the Government fails to prove that the acts occurred within the applicable limitations period at the trial, the [d]efendant may renew the motion to dismiss the indictment.  However, at this stage of the litigation the motion is premature.").  The Court does find, however, the indictment is sufficient to avoid dismissal pursuant to the statute of limitations.

### B.  Defendant's Pinkerton Liability

In addition, Taube argues that she cannot be implicated in Nazzal's act of threatening the family of Zeinab C. in October 2007 with physical force.  "Under the theory of co-conspirator liability established in Pinkerton v. United States, 328 U.S. 640, 646-47 (1946), the overt act of one partner in crime is attributable to all members of the conspiracy."  United States v. Williams, 894 F.2d 208, 212 (6th Cir. 1990).  Threatening witnesses in order to prevent cooperation with a government investigation presents an even stronger argument that such action furthers the conspiratorial objective.  Taube's only plausible defense to her implication in this act is that she withdrew from the conspiracy.  However, she did not raise this defense or provide evidence in support,

despite bearing the burden of production.  United States v. Lash, 937 F.2d 1077, 1083

(6th Cir. 1991) (defendant bears the burden of establishing he or she took affirmative

action to defeat the purpose of the conspiracy).  Therefore, even if Taube's false

statements in 2007 are found insufficient to constitute overt acts in furtherance of the

conspiratorial objective by the jury, Nazzal's actions present another potential overt act

to extend the conspiracy within the limitations period.

### C.  Single vs. Multiple Conspiracies

Defendant further argues each marriage is a distinct, separate conspiracy.  (Doc.

36 at 3) ("because two of the conspiracies [marriages] were completed in 1999, any

conspiracy charge premised on these actions [is] time-barred").  Taube cites no

language in the indictment or any authority to support this contention.

Whether there is one conspiracy or multiple conspiracies is a question for the

jury.  United States v. Segines, 17 F.3d 847, 856 (6th Cir. 1994).  As alleged in the

indictment, the actions of Defendants are one conspiracy involving multiple overt acts.

The indictment does not list three separate conspiracies.  In any event, the jury must be

convinced beyond a reasonable doubt that each Defendant was a member of the

conspiracy in the indictment.  See Sixth Circuit Pattern Jury Instruction § 3.08.

## IV.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motion.

**IT IS SO ORDERED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE


DATE:  October 11, 2012

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order was served upon all counsel of record, electronically.

<u>s/Bernadette M. Thebolt</u>
Case Manager